## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____
|   :   |
**BRIDGIT LOMBARD** : **CIVIL ACTION**
:
**Plaintiff,** :
: **No. 17–964**
**v.** :
:
**LASSIP, INC., f/k/a/ Nathan Sports, Inc., Nathan** :
**Brands, Inc., and Penguin Brands, Inc.,** :
:
**Defendant.** :
_____:

**Goldberg, J.**                                              **December 12, 2017**

## <u>MEMORANDUM OPINION</u>

Plaintiff Bridgit Lombard has sued her former employer Lassip, Inc. (f/k/a Nathan Sports, Inc., Nathan Brands, Inc, and Penguin Brands) ("the Company"), alleging several claims of discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* Plaintiff now seeks leave to amend her Complaint to (a) add claims against the Company for harassment, hostile work environment, and retaliation under the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951, *et seq.*, and (b) add as a defendant the Company's principal owner, Jonathan Reichlin, on a theory of aiding and abetting the Company's PHRA violation. Upon consideration of the parties' briefs and the proffered Amended Complaint, I will deny the Motion.

## I.    FACTUAL BACKGROUND[1]

In October 2010, Plaintiff was recruited for employment as the Company's Executive Vice President by Jonathan Reichlin, the Company's sole owner and chairman. Plaintiff accepted the

---

[1]     Deciding whether to allow the proposed Amended Complaint must be done in the context of the facts alleged in the original Complaint, which are set forth below. Those facts will be construed and all well-pleaded factual allegations in the Complaint will be viewed in a light favorable to Plaintiff. <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 211 (3d Cir. 2009).

position under the promise that she would enjoy equity ownership of 15% of the Company. In 2012, Plaintiff became Chief Executive Officer. (Compl. ¶¶ 21–23, 26.)

Eventually, Reichlin decided to sell some assets of the Company and agreed that the Company would pay Plaintiff an additional bonus in recognition of her efforts. At the time of the sale in June 2013, however, Plaintiff received only a portion of her bonus, leaving a substantial balance due to her. After the sale, Plaintiff agreed to continue in the position as CEO of the Company based on Reichlin's offer to (1) personally guarantee payment of the outstanding balance of her bonuses; (2) raise her salary; and (3) provide her with share certificates equal to a continuing 15% equity share in the Company. (Id. ¶¶ 29, 31, 32.)

At some point after her commencement of employment, Reichlin initiated a sexual relationship with Plaintiff. During the relationship, Reichlin made various personal loans to Plaintiff including (a) a loan of $200,000 and (b) another loan of $1,000,000 for the purchase of a Philadelphia condominium. Throughout 2013 and 2014, Plaintiff's romantic relationship with Reichlin deteriorated, but Reichlin continued to subject Plaintiff to verbal abuse and coercive demands for sex. As Reichlin was in full control of the Company, Plaintiff had no vehicle by which to lodge a complaint. (Id. ¶¶ 33, 35–37, 39.)

Thereafter, Plaintiff began a new relationship with another male co-worker. On April 14, 2015, Reichlin discovered this new relationship and immediately sent Plaintiff a demand for repayment of $75,000—the outstanding amount on the first personal loan. Reichlin also demanded a meeting with Plaintiff, which allegedly turned into another unwanted sexual encounter. After this encounter, Reichlin persisted in harassing her, stating that if Plaintiff sustained her new relationship, he would not pay what he and the Company owed her. When Plaintiff threatened to leave her position, Reichlin, in an effort to induce her to stay, reaffirmed both the obligation owed to her by the Company in connection with the sale of assets, and his offer

to forgive all of her debts to him personally. In reliance on these promises, Plaintiff agreed to and did remain CEO of the Company until it was sold. (Id. ¶¶ 40–49, 54.)

Reichlin's behavior, however, did not change and he repeatedly forced Plaintiff into unwanted sexual acts. When Plaintiff expressly told Reichlin that she would not acquiesce in any further sexual encounters, Reichlin subjected her to increased sexual harassment both in front of co-workers and through texts and phone calls. (Id. ¶¶ 50–53.)

On October 27, 2015, the remaining operational assets of the Company were sold and Plaintiff's employment with the Company ended. Following the sale, Reichlin retaliated against Plaintiff by: (a) failing to pay all monies owed to her; (b) sending messages soliciting a continued sexual relationship; (c) demanding repayment of all loans made to her, in breach of his prior forgiveness of those loans; and (d) sending Plaintiff a formal notice of mortgage foreclosure on June 16, 2016. Upon learning of Plaintiff's intent to pursue discrimination claims against him, Reichlin preemptively filed a state court complaint against her seeking mortgage foreclosure. (Id. ¶¶ 55, 56, 58.)

On August 2, 2016, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission ("PHRC"). The EEOC issued a right to sue letter on December 2, 2016.

Plaintiff initiated the current lawsuit against the Company on March 2, 2017, alleging (1) *quid pro quo* sexual harassment in violation of Title VII of the Civil Rights Act of 1964; (2) hostile work environment in violation of Title VII; and (3) retaliation in violation of Title VII. At the time this Complaint was filed, however, Plaintiff's complaint under the Pennsylvania Human Rights Act ("PHRA") was still pending. Plaintiff indicated her intent to later amend her Complaint and include PHRA claims for sexual harassment and retaliation against the Company and for aiding and abetting against Reichlin under the PHRA. (Compl. p. 1 n.1.)

The PHRC administratively dismissed Plaintiff's claim on April 25, 2017. Thereafter, on May 11, 2017, Plaintiff filed the current Motion for Leave to Amend. Defendants filed a brief in opposition on May 25, 2017, and Plaintiff filed a reply brief on June 8, 2017.

## II.     STANDARD OF REVIEW

Federal Rule of Civil Procedure 15(a)(2) provides that when a party makes a request to amend its complaint, "[t]he court should freely give leave when justice so requires." Id. at Rule 15(a)(2). Nevertheless, "[t]he policy favoring liberal amendment of pleadings is not . . . unbounded." Dole v. Arco Chem. Co., 921 F.2d 484, 487 (3d Cir. 1990). A district court may deny leave to amend a complaint where "it is apparent from the record that (1) the moving party has demonstrated undue delay, bad faith or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party." Lake v. Arnold, 232 F.3d 360, 373 (3d Cir.2000) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)). "While a District Court has substantial leeway in deciding whether to grant leave to amend, when it refuses this type of request without justifying its decision, this action is 'not an exercise of its discretion but an abuse of its discretion.'" Id. (quoting Foman, 371 U.S. at 182).

The futility of the proposed amendment may, standing alone, be a sufficient reason to deny leave to amend. See Foman, 371 U.S. at 182. "'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted." Holst v. Oxman, 290 F. App'x 508, 510 (3d Cir. 2008); In re Burlington Coat Factory Secs. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997). The trial court may deny leave to amend where the amendment would not withstand a motion under Federal Rule of Civil Procedure 12(b)(6). Massarsky v. Gen. Motors Corp., 706 F.2d 111, 125 (3d Cir. 1983).

Under Rule 12(b)(6), a defendant bears the burden of demonstrating that the plaintiff has not stated a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); see also Hedges v.

<u>United States</u>, 404 F.3d 744, 750 (3d Cir. 2005). The United States Supreme Court has recognized that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (quotations omitted). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" and "only a complaint that states a plausible claim for relief survives a motion to dismiss." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u>

## III.  DISCUSSION

As set forth above, Plaintiff seeks to add (1) PHRA claims against the Company for sexual harassment, hostile work environment, and retaliation, and (2) a claim against Reichlin for aiding and abetting the PHRA violations. Defendants oppose these amendments as futile, alleging that the proposed PHRA claims against the Company are time-barred and that Plaintiff's proposed addition of Reichlin as an individual Defendant under the PHRA's aiding and abetting provision is improper absent any PHRA violation by the Company.

### A.  <u>PHRA Claims Against the Company</u>

Defendants first argue that Plaintiff's effort to add additional claims of employment discrimination and retaliation under the PHRA is untimely because her PHRA complaint was filed more than 180 days after the alleged conduct took place. Plaintiff responds that her claims are based on a continuous pattern of discrimination and retaliation and, therefore, are not time barred.

The PHRA mandates that "[a]ny complaint filed pursuant to this section must be so filed [with the Pennsylvania Human Relations Commission] within one hundred eighty days after the alleged act of discrimination . . ." 43 Pa. Stat. § 959(h); <u>see also</u> <u>Capriotti v. Chivukula</u>, No. 04-2754, 2005 WL 83253, at *2 (E.D. Pa. Jan. 14, 2005) ("To preserve a claim under the PHRA, the

Plaintiff must file an administrative charge with the Pennsylvania Human Relations Commission within 180 days of the alleged act of discrimination."). "If a plaintiff fails to file a timely complaint with the [PHRC], then he or she is precluded from judicial remedies under the PHRA." Woodson v. Scott Paper Co., 109 F.3d 913, 925 (3d Cir. 1997). Pennsylvania courts have strictly interpreted this time requirement and repeatedly held that "persons with claims that are cognizable under the Human Relations Act must avail themselves of the administrative process of the Commission or be barred from the judicial remedies authorized in Section 12(c) of the Act." Id. (citing Pennsylvania cases).

The strict calculation of the statute of limitations, however, is tempered somewhat by the equitable exception found in the continuing violations doctrine. Pursuant to this doctrine, "when a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period; in such an instance, the court will grant relief for the earlier related acts that would otherwise be time barred." Cowell v. Palmer Twp., 263 F.3d 286, 292 (3d Cir. 2001) (quoting Brenner v. Local 514, United Bhd. of Carpenters & Joiners of Am., 927 F.2d 1283, 1295 (3d Cir. 1991)). The Third Circuit has stated that application of the continuing violations doctrine requires consideration of: (1) "whether the violations were related in subject matter" and (2) "whether the acts were recurring." Bennett v. Susquehanna Cnty. Children & Youth Servs., 592 F. App'x 81, 84 (3d Cir. 2014). Notably, however, "the continuing violations doctrine is not a substitute for a plaintiff's 'awareness of and duty to assert his/her rights' in a timely fashion." Id. (quotation omitted).

Here, Plaintiff invokes the continuing violations doctrine to assert that her PHRC Complaint was timely. She contends that although her employment with the Company ended once the sale of the Company's assets took effect on October 27, 2017, the harassing actions, *quid pro quo* demands by Reichlin, and retaliatory acts continued beyond that date. Specifically, Plaintiff

argues that, following the sale of the Company assets, "Reichlin continued his harassment and engaged in retaliatory actions against her evidencing a continuous and severe pattern and practice of unlawful behavior, culminating in bringing a baseless foreclosure action" on July 22, 2016, which is within the 180-day limitations period. (Pl.'s Reply Br. 9.).

Plaintiff's argument suffers from a crucial flaw—the PHRA discrimination and retaliation claims in the proposed Amended Complaint are brought against the Company alone, not against Reichlin. While Reichlin's sexual advances and demands prior to October 27, 2017 could potentially be characterized as a continuing violation by the Company, as of October 27, 2017, the Company ceased to exist. At that point, Plaintiff should have been aware of and had a duty to assert her rights against the Company. Reichlin's alleged continued sexual advances and retaliation after the Company was sold could only have been done in his individual capacity.[2] Therefore, the last possible discriminatory act by the Company was on October 27, 2017. As Plaintiff did not file her PHRA Complaint until August 2, 2018, well after the 180-day limitations period had run, Plaintiff's current claims against the Company under the PHRA are time-barred.

---

[2]  Plaintiff relies on two Supreme Court cases to support her theory that the Company remains liable for Reichlin's behavior. First, in Robinson v. Shell Oil Co., 519 U.S. 337 (1997), the United States Supreme Court has held that the word "employees" for purposes of § 704(a) of Title VII includes former employees. Id. at 345. Thus, post-termination retaliation by a company against a former employee for complaints filed by that employee falls within the ambit of Title VII. Id. at 346. Second, in Burlington Northern and Santa Fe Railway Co. v. White, 548 U.S. 53 (2006), the Supreme Court found that the anti-retaliation provision of Title VII covers any action that is "likely to dissuade employees from complaining or assisting in complaints about discrimination," and is not limited solely to acts relating to the employment itself. Id. at 69–70.

These cases are inapposite here. Had Plaintiff left the Company while it was still a viable entity and the Company retaliated against her because of complaints of discrimination she made during her employment, these cases would apply. The proposed Amended Complaint, however, alleges that after the Company was sold and ceased to exist, the former owner retaliated against her based on some personal vendetta. (Pl.'s Mot. to Amend, Ex. A, ¶¶ 57, 59.) The Supreme Court has not included such a scenario within the ambit of the retaliation provisions of Title VII.

**B.      Aiding and Abetting Under the PHRA Against Reichlin**

Plaintiff's proposed Amended Complaint also seeks to add Reichlin as a defendant under a theory of aiding and abetting a PHRA violation.  The PHRA provides in pertinent part:

> It shall be an unlawful discriminatory practice . . . [f]or any person, employer, employment agency, labor organization or employee, to aid, abet, [or] incite . . . the doing of any act declared by this section to be an unlawful discriminatory practice, or to obstruct or prevent any person from complying with the provisions of this act . . ., or to attempt, directly or indirectly, to commit any act declared by this section to be an unlawful discriminatory practice.

42 Pa. Stat. § 955(e).  While § 955(e) extends liability to any individual who aids and abets the alleged discrimination, "only supervisory employees, not co-workers, can be held liable under § 955(e)," based on the theory that only supervisory employees "can share the discriminatory purpose and intent of the employer that is required for aiding and abetting." Carlton v. City of Phila., No. Civ.A. 03–1620, 2004 WL 633279, at *8 (E.D. Pa. Mar. 30, 2004).

"For liability to be imposed on an aiding and abetting theory, however, there must be a cognizable predicate offense," *i.e.* a violation by the employer of the PHRA's primary anti-discrimination provision.  Dickinson v. Millersville Univ. of Pa., No. 13-5022, 2014 WL 1327610, at *5 (E.D. Pa. 2014).  "Individual defendants cannot violate PHRA section 955(e) when there is no corresponding section 955(a) violation by an employer to aid and abet."  Burgess–Walls v. Brown, No. 11–275, 2011 WL 3702458, at *6 (E.D. Pa. Aug. 22, 2011) (quotation omitted).

Plaintiff's PHRA claims against the Company here are time-barred, meaning there is no violation of the PHRA's primary anti-discrimination provision.  Absent a predicate offense under the PHRA, which Reichlin is alleged to have aided and abetted, the proposed aiding and abetting claim against him is futile.

**IV.    CONCLUSION**

In light of the foregoing, I find that Plaintiff's proposed amendments to the Complaint in order to add a PHRA claim against the Defendant Company and a PHRA aiding and abetting claim against Reichlin are futile. Plaintiff's Motion for Leave to Amend will therefore be denied in its entirety.